**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GIOVANNI SOTOMAYOR, | : | |
| Petitioner, | : | Civil No. 08-4108 (SRC) |
| v. | : | |
| MICHELLE R. RICCI, et al., | : | **MEMORANDUM OPINION** |
| Respondents. | : | |

    This matter comes before the Court upon Petitioner's filing of a § 2254 Petition. See Docket Entry No. 1. Petitioner was duly advised of his Mason rights. See Docket Entry No. 5. Respondents filed their answer ("Answer") to the Petition, see Docket Entry No. 11, and Petitioner duly filed his traverse. See Docket Entry No. 13. Moreover, in response to the Court's order detailing certain shortcomings in Respondents' submission of electronic record, Docket Entry No. 14, Respondents filed a sur-reply, supplementing the record and altering certain aspects of Respondents' position stated in the Answer. See Docket Entry No. 15 (repeated, in full or in part, as Docket Entries Nos. 17 and 20).[1]

---

[1] Respondents' electronic filing took place shortly after the Local Rules of this District were amended to require electronic filing causing Respondents certain confusion as to how to file and designate thirty-nine exhibits totaling five hundred and eighty three pages.

I.  **FACTUAL BACKGROUND**

The facts underlying Petitioner's conviction are not in dispute.

> The incident giving rise to the convictions occurred on July 17, 1999 in Union City when [Petitioner] approached the female victim as she arrived at an apartment building and was about to open the door. [Petitioner] then started to strip off the victim's clothing and ignored her entreaties to take her pocketbook and leave her alone. He pulled a knife out, held it to her neck while continuing his attempt to remove her clothes, and engaged in a sexual act with her. When apparently somebody was heard coming[,] he ordered the victim to get dressed and told her he was taking her somewhere else. As they walked a couple of blocks the victim struggled with [Petitioner], cried and tried to push him away. He cut her hand and threatened to kill her it she left. A police officer on patrol observed [Petitioner] with the victim and when he saw that he was holding a knife to the victim' a throat, he grabbed [Petitioner] from behind, took the knife from his hand and placed him under arrest.

Docket Entry No. 11-15, at 3 (decision by the Superior Court of New Jersey, Appellate Division, issued with regard to Petitioner's direct appeal).

Petitioner's conviction followed a jury trial on eleven counts of a twelve count indictment charging the following offenses: first-degree aggravated sexual assault during the course of a burglary, first-degree aggravated sexual assault while armed with a knife, second-degree sexual assault, two counts of third-degree aggravated criminal sexual contact, fourth-degree criminal sexual contact, third-degree possession of a weapon (a knife) for an unlawful purpose, second-degree

burglary, two counts of third-degree terroristic threats, and third degree criminal restraint. See id. At 1-2, see also Docket Entry No. 11-37, at 2.

## II. PETITIONER'S INSTANT CHALLENGES

The Petition at hand is, alas, of less than exemplary clarity because, instead of stating each ground of his challenges and then following the same with supporting facts, Petitioner first stated: "Petitioner . . . was denied effective assistance of counsel constitutionally guaranteed to him at trial," Docket Entry No. 1, at 4, and then elaborated as follows:

> During jury deliberations, the jurors asked if they could be given a copy of the instructions. Due to the absence of the stenographer, the trial judge ruled that a court clerk would be permitted to enter the deliberation room with the jurors to play back all or portions of the said tape containing the judge instructing the jury. Petitioner's counsel participated and agreed on this arrangement where also the jury foreman was permitted direct communication with the court clerk in regards to what the jurors needed to hear. This proceeding took place off the record and behind closed doors in the absence of the Petitioner, his counsel, and the trial judge's supervision. . . . Petitioner's Appellate Counsel failed to raise this issue on direct appeal . . . .

Id. at 5 (bolding removed).

These statements suggest that Petitioner wished to raise two grounds, one challenging the fact that his trial counsel did not object to a playback of the judicial instructions outside open court and another challenging Petitioner's appellate counsel's decision not to challenge the decision of the trial counsel.

### III. STATE PROCEEDINGS

#### A. Timeliness

At the earlier stages of these proceedings, there was a certain confusion as to timeliness of the Petition. See Docket Entry No. 14 (this Court's order detailing the reasons for confusion). That aspect, seemingly, was resolved to mutual agreement of the parties that the Petition is timely. See Docket Entry No. 15.

#### B. Exhaustion

Here, Petitioner filed his direct appeal arguing the points wholly unrelated to the issue at bar. See Docket Entries Nos. 11-8 to 11-14. However, Petitioner's pro se post-conviction relief ("PCR") application, as well as the PCR applications filed by Petitioner's counsel, raised the issue at hand. Specifically, Petitioner's represented PCR applications at all three levels of the state court raised this challenge, but only with regard to the performance of Petitioner's trial counsel, see Docket Entries Nos. 11-20, 11-29 and 11-40, while Petitioner's pro se PCR application raised this challenge with regard to both Petitioner's trial and appellate counsel, but only at the Law Division level. See Docket Entry No. 15-4, at 8. Consequently, the challenges as to the performance of Petitioner's appellate counsel remained unexhausted before the Appellate Division and the Supreme Court of New Jersey.

4

This fact renders the Petition a "mixed" petition. Faced with a "mixed" petition, this Court had four options: (a) dismiss the Petition without prejudice under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); (b) "stay and abey" under <u>Rhines v. Weber</u>, 544 U.S. 269 (2005); (c) allow Petitioner to delete his unexhausted claims, <u>see</u> <u>Rhines</u>, 544 U.S. at 278; or (d) if all of Petitioner's claims are meritless, deny the Petition under the language of § 2254(b)(2) allowing denial of a petition on the merits "notwithstanding the failure of the applicant to exhaust."

The option "(a)" appears unwarranted in the instant matter, since Petitioner's limitations period has expired (because the statute of limitations was not tolled under § 2244(d)(2) for the time during which a habeas petition has been pending before this court, <u>see</u> <u>Jones v. Morton</u>, 195 F.3d. 153, 158 (3d Cir. 1999)), and dismissal without prejudice would effectively translate into dismissal on merits without an examination of these merits, in violation of the Court of Appeals' teaching in <u>Urcinoli v. Cathel</u>, 546 F.3d 269 (3d Cir. N.J. 2008).

The option "(b)" cannot, by definition, coexist with the option "(d)," since the Supreme Court in <u>Rhines</u>, 544 U.S. at 277, explained that "the district court would abuse its discretion if it were to grant . . . a stay when [petitioner's] unexhausted claims are plainly meritless." Moreover, the option "(c)" appears to be not in the interests of judicial economy in the

event the option "(d)" is present, i.e., if petitioner's claims are meritless: allowing the petitioner to delete his unexhausted meritless claims would yield an outcome identical to that obtained through dismissal on merits -- it would merely save the court the effort of drafting a few pages of the opinion, doing it at the cost of unnecessarily procrastination of the proceedings.

Here, since Petitioner's challenges as to the performance of his counsel on direct appeal are wholly without merits, same as Petitioner's challenges to the performance of his trial counsel, the Court finds it proper to utilize the option "(d)" and dismiss Petitioner's exhausted and unexhausted challenges.  **IV.**

**STANDARD OF REVIEW**

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County

Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).

Where a federal claim was "adjudicated on the merits"[2] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's

---

[2] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005).

decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[3] Id. at 409-10.

## V.  STATE COURT FINDING

The state courts, while addressing Petitioner's challenges with regard to the performance of Petitioner's trial counsel, found as follows:

> [C]ounsel's failure to object to a tape-recorded playback of jury instructions did not constitute

---

[3] "[A] decision represents an 'unreasonable application of' precedent only when that decision applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable, when that decision fails to apply the principle of a precedent in a context where such failure is unreasonable, or when that decision recognizes the correct principle from the higher court's precedent, but unreasonably applies that principle to the facts before it (assuming the facts are insufficiently different from those that gave rise to the precedent as to constitute a new context for consideration of the principle's applicability)." Matteo v. Superintendent, SCI Albion, 171 F.3d 865, 870 (3d Cir. 1999) (Becker, J. concurring) (quoting Green v. French, 143 F.3d 865 (4th Cir. 1998)). A state court's finding can be neither unreasonable nor contrary to clearly established federal law as determined by the United States Supreme Court when there exists no precedent regarding the issue. See Lockyer v. Andrade, 538 U.S. 63, 71-73 (2003) (habeas court must decide if there is clear precedent of the United States Supreme Court as "clearly established" phrase "refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision"); see also Mitchell v. Esparza, 540 U.S. 12, 17 (2003)("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous").

9

> ineffective assistance of counsel. Defendant accurately observes that <u>ex parte</u> communications between the judge and jury are greatly discouraged. . . . It goes without saying that every readback and the exchanges accompanying it must be recorded in full. . . . There was, however, no live readback in this case. Here the jury simply heard the exact tape recording of the instructions that had been presented to them earlier in open court. Therefore, there was no risk of inadvertent deviation or inconsistency, and [Petitioner] could have suffered no prejudice from counsel's failure to object on this matter.

Docket Entry No. 11-37, at 7-8 (citations to state law omitted).

## VI. ANALYSIS

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. See <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result

10

is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Here, the Petition does not suggest, even remotely, that the jurors would have developed a reasonable doubt with respect to Petitioner's guilt had the playback was conducted in open court (i.e., in the presence of Petitioner, his counsel, the judge and stenographer). Moreover, not a single statement made in the Petition suggests that, during the playback, the jurors heard anything but the actual recording of the instructions already given to them in open court. That itself: (a) brings the performance of Petitioner's counsel outside the realm where errors are "so serious as to deprive [Petitioner] of a fair trial [which] result is reliable," Strickland, 466 U.S. at 687; and (b) renders the decision of the state court not an unreasonable application of Strickland, that is, if this Court were to presume that any Strickland-based considerations were on the state court's mind when it qualified the playback as "ex parte communications" between the judge and the jurors.

If this Court were to hypothesize that the "ex parte communications" issue was, in fact, implicated in Petitioner's state proceedings, the state court finding

11

would not be an unreasonable application of the Supreme Court precedent.[4]  See Rushen v. Spain, 464 U.S. 114 (1983).  In Rushen, the Supreme Court held:

> [T]he right to personal presence at all *critical* stages of the trial [is a] fundamental rights of each criminal defendant.  "At the same time and without detracting from the fundamental importance of [this right], we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice.  Cases involving [such constitutional] deprivations are [therefore] subject to the general rule that remedies should be tailored to the injury suffered . . . and should not unnecessarily infringe on competing interests." United States v. Morrison, 449 U.S. 361, 364 (1981); see also Rogers v. United States, 422 U.S. 35, 38-40 (1975).  In this spirit, we have previously noted that the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217 (1982).  There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial.  The lower federal courts' conclusion that an unrecorded ex parte communication between trial judge and juror can never be harmless error ignores these

---

[4]  It is important to distinguish extraneous materials and ex parte contacts.  Where extraneous material is submitted to the jury, the defendant will receive a new trial if the court finds a "reasonable possibility" that the material could have affected the verdict.  See United States v. Madrid, 842 F.2d 1090, 1093-94 (9th Cir.), cert. denied 488 U.S. 912 (1988).  In contrast, where ex parte contacts are involved, the defendant will receive a new trial only if the court finds "actual prejudice" to the defendant.  See id. at 1093.  Here, the playback did not introduce any extraneous material.  Therefore, Petitioner has to show that he was actually prejudiced by the jurors' listening to the instructions once again.  The Petition, however, is void of any allegations to that effect (and the Court cannot begin to fancy an argument that Petitioner in support of such position).

>   day-to-day realities of courtroom life and undermines
>   society's interest in the administration of criminal
>   justice.

Id. at 117 (emphasis supplied).[5]

Here, the process of playing back the instructions given in open court cannot be qualified as a "crucial stage" of Petitioner's criminal proceedings, subjecting Petitioner's trial court's decision to allow the playback outside open court to "harmless error" analysis.

Where a constitutional error has occurred, it generally is subject to "harmless error" analysis. See Smith v. Horn, 120 F.3d 400, 416-17 (1997); Neder v. United States, 527 U.S. 1, 8-11 (1999). Only "if the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Smith, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). If the error inquiry pertains, as it is here, to jury instructions,

---

[5] In Rushen, the Court applied harmless error analysis to a trial judge's ex parte communications with a juror about the juror's personal interaction with a police informant currently testifying before the juror. See Rushen, 464 U.S. at 120-21. Neither defense counsel nor the prosecutor learned of the ex parte communications until after the trial. The Rushen Court found that the post-trial hearing held on the matter provided sufficient evidence the communication between the judge and juror was innocuous and that no bias infected the jury's deliberations. See id.

"[the] instruction[s] . . . may not be judged in artificial isolation, but must be viewed in the context of the overall charge [to determine] whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Middleton v. McNeil, 541 U.S. 433, 437 (2004).

Here, the "overall charge" consists of the original instructions given in open court and a replay of the same outside open court. Since Petitioner does not assert that the jurors applied *the original* instruction in a way that violates the Constitution any claim that the jurors could not have applied *the very same but recorded* instruction in a way that violates the Constitution meritless. Which, in turn, the playback was, at most, a harmless error and establishes that Plaintiff's counsel was not ineffective in failing to challenge a harmless error, because an omission of such challenge cannot bring the counsel's performance below an objective standard of reasonable professional assistance.

For these reasons, Plaintiff's duly exhausted challenges to the performance of his trial counsel will be dismissed.

Plaintiff's challenges as to the performance of his appellate counsel fare no better. "[I]t is a well established principle that counsel decides which issues to pursue on appeal." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Appellate

counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Therefore, Petitioner's claim that his appellate counsel was ineffective by not selecting the claim Petitioner preferred for direct appeal is without merit: the decision which issues to pursue on appeal is an exercise of professional judgment, which Petitioner's counsel duly performed. See Jones, 463 U.S. at 751; Sistrunk, 96 F.3d at 670. accord Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

## VII. CERTIFICATE OF APPEALABILITY

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## VIII. CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

/s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated: 3/3/10